SAVOIE, Judge,
dissenting.
I respectfully dissent.
The standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and defendant’s identity as perpetrator of that crime,beyond a reasonable doubt. See La.C.Cr.P. art. 821. The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. L.S.A.-R.S. 15:438. Exclusion of every reasonable hypothesis of innocence *605 is, therefore, a component of the more comprehensive reasonable doubt standard where circumstantial evidence is used to convict. State v. Nealy, 450 So.2d 634 (La.1984).
In this matter, the only evidence that the defendant was driving while intoxicated is the testimony of State Trooper Doug Robertson. Trooper Robertson’s testimony is completely unsupported by any other testimony and, in point of fact, is contradicted by Mr. Masters, driver of the other vehicle, and Mr. Paul Villemarette, an independent and unbiased witness to the accident.
The essence of Trooper Robertson’s testimony is three-fold: (1) that Mr. Austin’s eyes were red and glassy; (2) that he had a moderate odor of alcoholic beverage about his person; and (3) he failed to pass a field sobriety test.
As to Mr. Austin’s eyes being red and glassy, this is unsupported by the testimony of either Mr. Masters or Mr. Villemar-ette. Assuming that his eyes were red and glassy, such condition could result from any one of a number of causes, not the least of which could have been the fact that he had just been involved in an automobile accident. This testimony, standing alone, is not indicative in any way that Mr. Austin was driving while intoxicated or driving while under the influence of alcohol.
Trooper Robertson’s testimony that the defendant had a moderate odor of alcoholic beverage about his person is unsubstantiated either by Mr. Villemarette or Mr. Masters. The second witness called by the State, Mr. John Masters, the driver of the vehicle which caused the accident, stated that he did stand next to Mr. Austin while the trooper was questioning him, but he did not notice any odor of alcohol. Two interesting observations as to Mr. Masters’ testimony should be made: (1) this was the State’s witness who was testifying in direct contradiction with the testimony of Trooper Robertson; (2) it would have been in Mr. Masters’ best interest to testify just the opposite in order to avoid civil liability as a result of the accident. Mr. Villemarette, who was called as defendant’s witness and who was totally unbiased in the matter, stated that he did, in fact, talk to Mr. Austin following the accident and that he did not smell any odor of alcohol coming from Mr. Austin. Thus, the testimony relative to Mr. Austin’s having the odor of alcohol about him is negated by the testimony of the State’s witness, Mr. Masters, and defendant’s witness, Mr. Villemarette.
Finally, the .State relied upon the field sobriety test to obtain a conviction of Driving While Intoxicated against Mr. Austin., No chemical test for intoxication or blood test for intoxication was offered by the State to show that the defendant was legally intoxicated. Therefore, we should examine, in detail, the field sobriety test administered by Trooper Robertson.
The abbreviated field sobriety test consisted of requiring the defendant to walk ten paces towards him and asking defendant to place his feet together, tilt his head back, close his eyes, and touch his nose with his forefinger. On the walking test, the officer testified that he asked defendant to walk towards him for approximately ten paces, then return and walk away. The officer admitted, under cross-examination, that the State Police Manual requires that defendant be required to walk twenty feet in one direction, turn and walk back in order to properly administer a field sobriety test. The officer required the defendant to walk a straight line, even though there, was no line marking on the highway, and required the defendant to walk heel-to-toe for this test. Mr. Austin argues, in brief, that no one walks heel-to-toe as a normal means of traversing from one location to another, that this test is designed to force an individual, even one who is not impaired, to be awkward and unbalanced. I agree. To ask Mr. Austin, who had just been involved in an automobile accident, to walk heel-to-toe on an imaginary, straight line, to turn and then walk back, is indicative of nothing. It is to Mr. Austin’s credit that both Mr. Masters and Mr. Villemarette thought that he had performed his test well.
*606 The second test administered to defendant was a balance test wherein the defendant was required to tilt his head back, close his eyes, and touch his nose with his index finger. Trooper Robertson stated defendant failed to pass this test because he missed the tip of his nose. He did admit, however, that the defendant did, in fact, touch his nose during this test with both fingers, but not with the tip of his finger.
We note once again that this test is more stringent than that called for by the Police Manual. The Police Manual does not require that a person tilt his head back. It requires only that one stand straight with eyes closed, and touch his nose with his index finger. Once again, Mr. Masters and Mr. Villemarette both testified that the defendant had passed this test also.
Trooper Robertson made reference to the defendant’s slurred speech. However, this is negated once again by Mr. Villemarette and Mr. Masters.
Under the particular circumstances of this case, the worst that can be said of defendant is that the field sobriety test was inconclusive. Or, stated in another manner, viewed in the light most favorable to the prosecution, this evidence would warrant a finding that the field sobriety test and procedures were inconclusive as to whether or not any alcohol had been consumed by defendant, or how much alcohol had been consumed by the defendant.
This is not a swearing match between the arresting officer and the driver. The State Trooper gave his testimony. In support thereof, the State presented the testimony of Mr. Masters. Mr. Masters’ testimony, however, completely contradicted the testimony of the State Trooper. Then the defendant presented the testimony of Mr. Villemarette who was totally unbiased since he knew neither Mr. Masters, Trooper Robertson, nor the defendant, Mr. Austin. Mr. Villemarette’s testimony also completely and totally contradicted the testimony of Trooper Robertson. The evidence does not even support a suspicion that defendant had been drinking.
The majority opinion relies on the fact that since Mr. Villemarette was driving immediately in front of defendant and he was able to swerve and avoid running into the rear of the vehicle driven by Mr. Masters, the inability of defendant to do so was evidence that he was driving while intoxicated. This is, at best, speculation, and there is nothing in the record to support this fact.
A very reasonable hypothesis in this matter is that the defendant, having just been involved in an automobile accident, was a little dazed and was concerned about his wife, who he feared was injured in the accident. A reading of the entire record reflects that not only is this a reasonable hypothesis, it is the only reasonable hypothesis.
For the above and foregoing reasons, I respectfully dissent.